IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LISA MARTIN, | ) | CIVIL NO. 24-00037 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MARTIN O'MALLEY, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS**

This case involves the appeal of the Social Security
Administration Commissioner's denial of Disability Insurance
Benefits to Plaintiff Lisa Martin.

Plaintiff asserts she has been disabled since June 10, 2021.
Plaintiff's claimed disability is based on chronic fatigue
syndrome, hypothyroidism, asthma, a chronic inflammatory skin
condition called hidradenitis suppurativa, fibromyalgia,
obstructive sleep apnea, impaired vision, connective tissue
disorder, coma or severe vegetative state, major depressive
disorder, and generalized anxiety disorder.

On August 16, 2021, Plaintiff filed an application for
Disability Insurance Benefits pursuant to Title II of the Social
Security Act.

The Social Security Administration initially denied her
application for Disability Insurance Benefits.  The

Administration denied the application on reconsideration.

Following an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff was not disabled and could perform work in the national economy.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision and Plaintiff appealed to this Court.

The Court **REVERSES** the decision of the Social Security Administration Commissioner and **REMANDS** the case for further evaluation.

## PROCEDURAL HISTORY

On August 16, 2021, Plaintiff filed an application for Disability Insurance Benefits with the Social Security Administration.  (Administrative Record ("AR") at p. 64, ECF No. 9).

On February 22, 2022, the Social Security Administration denied Plaintiff's initial application.  (AR at p. 88).

On July 18, 2022, the Administration denied her request for reconsideration.  (AR at pp. 93-94).

Following the denial of reconsideration, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ").  (AR at p. 103-04).

On May 15, 2023, an ALJ conducted a hearing on Plaintiff's application via televideo conference.  (AR at pp. 39-55).

On July 11, 2023, the ALJ issued a written decision denying

Plaintiff's application for Disability Insurance Benefits.  (AR at pp. 17-32).

Plaintiff sought review by the Appeals Council for the Social Security Administration.  The Appeals Council denied further review of Plaintiff's application on November 27, 2023, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (AR at pp. 1-3).

On January 26, 2024, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny her application for Disability Benefits in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint for Review of Social Security Disability Insurance Determination, ECF No. 1).

On March 28, 2024, the Magistrate Judge issued a briefing schedule.  (ECF No. 10).

On April 17, 2024, Plaintiff filed a Motion for Extension of Time to File Opening Brief, which was granted.  (ECF Nos. 11, 12).

On April 29, 2024, Plaintiff filed PLAINTIFF'S OPENING BRIEF.  (ECF No. 13).

On May 29, 2024, the Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 15).

On June 9, 2024, Plaintiff filed PLAINTIFF'S REPLY BRIEF.  (ECF No. 16).

On September 10, 2024, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.

**BACKGROUND**

**Plaintiff's Work History**

Plaintiff is a 55 year-old female.  (Administrative Record ("AR") at p. 42, ECF No. 9).

Plaintiff was a schoolteacher for more than 26 years from February 1995 until June 10, 2021.  (Id. at pp. 42, 216).

Plaintiff served as the district teacher of students with visual impairment/blindness and also acted as an orientation and mobility instructor.  (Id. at pp. 43, 217).  Plaintiff worked with children from preschool through age 22.  (Id. at p. 43).

**Plaintiff's Medical History**

Plaintiff's initial depression diagnosis was made in 1986 following a suicide attempt at age 17.  (Id. at pp. 944, 948, 1017).  Plaintiff began psychiatry treatment in 1989.  (Id. at pp. 944, 948).

According to her medical records, Plaintiff suffered from a mental health breakdown in 2005.  (Id. at p. 1017).

**Dr. Lisa Barville, M.D.  (Plaintiff's Primary Care Physician)**

Dr. Lisa Barville, M.D., has been Plaintiff's treating primary care physician since 2017.  (Id. at p. 326).

On June 15, 2021, Plaintiff was examined by Dr. Barville as part of Plaintiff's application for retirement pursuant to her disability as required by the State of Hawaii Employees'

4

Retirement System.  (Id. at pp. 325-27).

Dr. Barville explained that Plaintiff has been diagnosed with chronic fatigue syndrome.  (Id. at p. 326).  Plaintiff was diagnosed with fibromyalgia in 2005, with pain regions fluctuating and worsening over time.  (Id. at p. 760).

Dr. Barville found that Plaintiff's duties as a school teacher would be permanently impaired based on her chronic fatigue and fibromyalgia pain diagnoses.  (Id. at p. 327).  Dr. Barville found that Plaintiff's conditions of fatigue, difficulty concentrating, and pain began in 2005 and continued to worsen. (Id. at p. 325).  Dr. Barville stated that as of June 2021, Plaintiff was "bedridden by 11am-12pm."  (Id.)

Plaintiff's medical records with Dr. Barville reflect that Plaintiff has been diagnosed with hypothyroidism, insomnia, asthma, migraines, obstructive sleep apnea, obesity, hyperlipidemia, and skin disorders in addition to her major depressive disorder and generalized anxiety disorder.  (Id. at pp. 959-60, 974-86).  Plaintiff's medical records further state that Plaintiff suffers from chronic eye inflammation and dry eyes.  (Id. at pp. 997-1001).

**Tim Jackinsky, N.P.        (Plaintiff's Mental Health Nurse Practitioner)**

Nurse Practitioner Tim Jackinsky, N.P., provided mental health counseling services to Plaintiff and had been treating her since 2017.  (Id. at p. 323).  He found that Plaintiff suffered

from major depression and a generalized anxiety disorder.  (Id. at pp. 322-24).

On August 5, 2021, Plaintiff was examined by Nurse Practitioner Jackinsky as part of Plaintiff's application for retirement pursuant to her disability.  (Id.)

Nurse Practitioner Jackinsky explained that Plaintiff had complied with treatment since 2017 and had adhered to her medications.  (Id.)  He noted that Plaintiff had been seeing a psychologist every two weeks and a psychiatrist monthly for many years.  (Id.)  He determined that despite Plaintiff's skills, intelligence, and adherence to treatment, she continues to suffer from persistent depression with anxiety and intermittent suicidal ideation that rendered her unable to carry out her teaching duties.  (Id.)

**Dr. Kimberly Valentine, M.D.  (Plaintiff's Psychiatrist)**

Plaintiff's began seeing her treating psychiatrist Dr. Kimberly Valentine, M.D., on November 10, 2021.  (Id. at p. 944). Plaintiff saw Dr. Valentine approximately every three months. (Id. at p. 954).

Dr. Valentine's examination records from examinations on November 10, 2021, February 15, 2022, May 17, 2022, July 20, 2022, and February 28, 2023, reflect numerous severe mental health diagnoses.  (Id. at pp. 944-958).

Dr. Valentine found that Plaintiff had major depressive disorder and generalized anxiety disorder.  (Id. at pp. 944,

6

948).  Dr. Valentine determined that Plaintiff suffered from
generalized persistent anxiety, hostility and irritability,
decreased energy, difficulty concentrating or thinking, suicidal
ideation or attempts, psychomotor agitation, mood disturbance,
and sleep disturbance, among others.  (Id.)

Dr. Valentine determined that Plaintiff suffered from
chronic fatigue and chronic pain that is exacerbated by
Plaintiff's depression.  (Id.)  Dr. Valentine found that
Plaintiff had been subject to crying spells of up to 60 minutes
in duration, 4 to 5 times a week.  (Id.)

Dr. Valentine explained that Plaintiff was currently
prescribed eight medications to treat her various health
conditions.  (Id. at p. 954).

**Plaintiff Granted Retirement Due To Her Disability From State Of
Hawaii Department Of Education In August 2021**

Plaintiff testified that in June 2021, her psychiatrist Dr.
Valentine recommended that Plaintiff stop working.  (Id. at p.
44).  Plaintiff was only working one day a week at that point,
because she was having trouble controlling her emotions and had
to leave work because she was crying quite often.  (Id.)
Plaintiff testified she was having crying spells about 6 days a
week.  (Id.)  She explained that her crying spells lasted about
20 to 45 minutes at a time.  (Id.)

Plaintiff testified that she was diagnosed with chronic
fatigue syndrome and fibromyalgia and the pain from the

conditions contributed to her need to retire.  (<u>Id.</u> at pp. 47-48).  Plaintiff explained that she had also been diagnosed with depression and anxiety and has suffered from panic attacks.  (<u>Id.</u> at p. 49).  Plaintiff testified that she suffered from fatigue, was unable to concentrate or focus, and had sleeping problems. (<u>Id.</u> at p. 44).

Plaintiff explained that her numerous ailments and conditions made her unable to perform her job and also interfered with her ability to take care of herself.  (<u>Id.</u> at pp. 44-48). Plaintiff explained that she struggled to perform household tasks and that she usually has two days a week where she is unable to get out of bed.  (<u>Id.</u> at pp. 45-48).

On August 1, 2021, Plaintiff was granted a teacher's retirement by the State of Hawaii Department of Education based on Plaintiff's disability.  (<u>Id.</u> at p. 42).

## **STANDARD OF REVIEW**

A claimant is disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

**ANALYSIS**

**I.   Applicable Law**

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. § 423.  The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled.  The Commissioner of the Social Security Administration reviews a disability claim by evaluating the following:

> (1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> (2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
> (3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> (4)   Does the claimant possess the residual functional capacity to perform his past relevant work?  If

so, the claimant is not disabled.  If not, proceed
to step five.

(5)   Does the claimant's residual functional capacity,
      when considered with the claimant's age,
      education, and work experience, allow him to
      adjust to other work that exists in significant
      numbers in the national economy?  If so, the
      claimant is not disabled.  If not, the claimant is
      disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir.

2006) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of proof at steps one through

four, and the Commissioner has the burden of proof at step five.

Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## II.   The Administrative Law Judge Reviewed Plaintiff's
         Application By Using The Five-Step Sequential Evaluation

At Plaintiff's May 15, 2023 administrative hearing, the

Administrative Law Judge ("ALJ") for the Social Security

Administration reviewed Plaintiff's claim by engaging in the

five-step sequential evaluation.

The Parties agree there were no errors in the first three

steps of the administrative review process.

**At step one**, the ALJ found that Plaintiff met the insured

status requirements for Disability Insurance Benefits through

December 31, 2026. (AR at p. 19, ECF No. 9).

**At step two**, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since June 10, 2021.  (Id.)

**At step three**, the ALJ found that Plaintiff has the

following severe impairments: chronic fatigue syndrome,
hypothyroidism, asthma, hidradenitis suppurativa [chronic
inflammatory skin disease], fibromyalgia, obstructive sleep
apnea, impaired vision, connective tissue disorder, coma or
severe vegetative state, major depressive disorder, and
generalized anxiety disorder.  (Id.)

**At step four**, the ALJ reviewed the record and made a finding
as to Plaintiff's residual functional capacity.

The ALJ found that Plaintiff could perform light work as
follows:

> The claimant can lift and/or carry up to 20 pounds
> occasionally and up to 10 pounds frequently, stand
> and/or walk up to 6 hours in an 8-hour workday, and sit
> 6 hours out of an 8-hour workday) except that she:
>
> is limited to no more than occasional use of ramps and
> stairs as well as ropes and ladders and also scaffolds;
>
> is limited to no more than occasional balancing,
> stooping, crouching, kneeling, and crawling;
>
> can have no concentrated exposure to respiratory
> irritants;
>
> can tolerate occasional changes in a routine work
> setting;
>
> can tolerate a low level of work pressure defined as
> work not requiring multitasking, very detailed job
> tasks, significant independent judgment, a production
> rate pace, or teamwork in completing job tasks; and,
>
> can tolerate occasional interaction with coworkers and
> the public.
>
> (AR at p. 23, ECF No. 9).

**At step five**, the ALJ inquired with the vocational expert to
evaluate if there were other jobs that Plaintiff could perform.

The ALJ found that Plaintiff was unable to perform any past relevant work as a Teacher.  (Id. at p. 30).  The ALJ found that Plaintiff could perform work as an Electronics Worker, Garment Sorter, or Office Clerk.  (Id. at p. 31).

Plaintiff's application for Disability Insurance Benefits was denied.  (Id. at p. 32).

## III. Remand Is Required To Enable The ALJ To Properly Consider The Medical Opinions In The Record And The Totality Of The Plaintiff's Impairments

### A.   The ALJ Did Not Properly Evaluate The Medical Opinions In The Record

Pursuant to revised regulations promulgated by the Social Security Administration in January 2017, a medical professional's relationship with a claimant is no longer a decisive factor when considering the persuasiveness of medical opinion.  The 2017 regulations apply to Plaintiff's case because her claim was filed after March 27, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416); Woods v. Kijakazi, 32 F.4th 785, 789 (9th Cir. 2022).

The 2017 regulations put forward by the Social Security Administration displaced the Ninth Circuit's longstanding approach.  The new regulations bar fact-finders from giving specific evidentiary weight to particular medical opinions.  See Cross v. O'Malley, 89 F.4th 1211, 1214 (9th Cir. 2024) (quoting 20 C.F.R. § 416.920c(a)).  The practical effect of the

regulations was to eliminate the deference that had previously
been shown to the medical opinion of a claimant's treating
physician.  Woods, 32 F.4th at 792.

Under current Ninth Circuit case law, the ALJ must
scrutinize each proffered medical opinion and determine how much
weight each opinion should be given.  Cross, 89 F.4th at 1213-14;
20 C.F.R. § 416.920c(b).  When evaluating a medical opinion, the
ALJ must consider and explain both the evidence's consistency and
its supportability.  Id. at 1216; 20 C.F.R. § 416.920c(a)-(c).

Consistency is the extent to which a medical opinion is
coherent with the record evidence from other medical and
nonmedical sources.  Woods, 32 F.4th at 792-93.  Supportability
speaks to the extent to which a medical source supports the
medical opinion with relevant medical evidence.  Id.

The ALJ cannot reject a doctor's opinion as inconsistent or
unsupported without a sufficient basis.  Woods, 32 F.4th at 792;
Paul H. v. Kijakazi, 2023 WL 5420232, *4 (N.D. Cal. Aug. 22,
2023).  The ALJ must articulate how persuasive it finds all of
the medical opinions and explain how he considered the
consistency and supportability in reaching these findings.  Id.

> **1.    The ALJ Did Not Properly Evaluate The Consistency
>         Of The Opinions Of Dr. Kimberly Valentine, M.D.,
>         Nurse Practitioner Tim Jackinsky, N.P., and Dr.
>         Lisa Barville, M.D.**

An ALJ cannot reject a medical opinion for being
inconsistent without providing an explanation supported by

substantial evidence.  <u>Woods</u>, 32 F.4th at 792.  The consistency factor looks outward and requires the ALJ to consider whether a medical opinion is consistent with the record as a whole, including evidence from other medical sources and nonmedical sources.  <u>See</u> 20 C.F.R. § 416.920c(c)(2).

The ALJ rejected the medical opinions of three separate treating medical professionals: (1) Plaintiff's psychiatrist who she sees every three months, Dr. Kimberly Valentine, M.D.; (2) Plaintiff's mental health Nurse Practitioner Tim Jackinsky, N.P.; and, (3) Plaintiff's primary care physician Dr. Lisa Barville, M.D.

The ALJ did not properly evaluate the opinions of Dr. Valentine, N.P. Jackinsky, and Dr. Barville.  The ALJ did not sufficiently explain his reasoning for rejecting their opinions.

The ALJ's decision is difficult to decipher and does not provide a sufficient basis to ignore these medical evaluations in the record.  The ALJ did not explain how the three medical professionals' findings were inconsistent with voluminous objective medical evidence present elsewhere in the record.  <u>Howard v. Kijakazi</u>, Civ. No. 23-00138 JMS-RT, 2023 WL 6141372, *7 (D. Haw. Sept. 20, 2023).

> **a.  The Opinions Of Dr. Valentine, N.P. Jackinsky, and Dr. Barville Are Consistent With Each Other**

It is notable that the three treating source medical opinions all generally agree with each other as to Plaintiff's

diagnoses and limitations.  The ALJ does not recognize the three opinions' consistency with each other.

Each medical professional found Plaintiff had a history of severe depression, anxiety, and suicidal ideation that prevented Plaintiff from continuing to work as a teacher for visually impaired children. (AR at pp. 322-27, 944-58, ECF No. 9).

Each medical professional determined that Plaintiff suffered from chronic fatigue syndrome and various mental health disorders, including major depressive disorder and anxiety that interfered with Plaintiff's ability to leave her house, and interact with others, and caused her difficulty concentrating, thinking, and completing tasks.  (Id.)

The three medical professionals each determined that Plaintiff suffered from severe fatigue and depression that was progressively worsening, causing Plaintiff difficulty in interacting with others and performing simple tasks.  (Id.)

The findings of the three medical professionals were supported by ample objective medical evidence.  (AR at pp. 959-1362).  The medical records demonstrate that Plaintiff has been repeatedly diagnosed with severe depression and anxiety, has previously attempted suicide and suffered from mental breakdowns, and has physical ailments disorders, including chronic fatigue syndrome and fibromyalgia.  (See id. at pp. 760, 780, 871, 1006-07, 1061, 1070, 1081, 1088, 1193-94, 1284, 1302).  Plaintiff is prescribed various medications to treat these conditions.  (Id.)

The ALJ rejected the three medical expert's findings.  In

his decision, the ALJ does not recognize that the three medical experts' opinions are consistent with each other.  Rather than recognize their similar findings, the ALJ tersely states that the three medical opinions were not supported by the objective medical evidence.  The ALJ does so without citing to any specific evidence or explaining his reasoning.  The ALJ's conclusory analysis is reversible error and requires remand.  <u>Baker v. Comm'r of Soc. Sec. Admin.</u>, 2022 WL 2390945, at *3 (D. Ariz. July 1, 2022).

> **b.  The ALJ Ignored Medical Record Evidence Documenting Plaintiff's Limitations And Multiple Diagnoses**

The ALJ seems to misunderstand Plaintiff's medical records concerning chronic fatigue syndrome and fibromyalgia.

Plaintiff's medical records explain that she was diagnosed with fibromyalgia in 2005.  (AR at p. 760, ECF No. 9).  In April 2022, Dr. Barville referred Plaintiff to a physical therapist, Jacob Pobre, who found that Plaintiff's fibromyalgia caused her to suffer pain in different regions of her body that had been fluctuating but was ultimately worsening over time.  (<u>Id.</u>)  Plaintiff was prescribed Gabapentin, Ibuprofen, and Tramadol for her pain.  (<u>Id.</u>)

The ALJ found, without explanation, that Dr. Valentine, Nurse Practitioner Jackinsky, and Dr. Barville's findings as to Plaintiff's limitations based on her poor mental health, chronic fatigue syndrome, and fibromyalgia were not consistent with the

"objective medical evidence" in the record.  The ALJ, however, did not cite to the basis for rejecting the medical evidence. Rather, the ALJ appears to have entirely ignored the medical records concerning Plaintiff's fibromyalgia diagnosis causing chronic, worsening pain.  (See id. at pp. 760, 780, 871, 1006-07, 1061, 1070, 1081, 1088, 1193-94, 1284, 1302).

An ALJ's conclusory rejection of the medical opinions regarding fibromyalgia has been repeatedly remanded by the Ninth Circuit Court of Appeals.  See Revels v. Berryhill, 874 F.3d 648, 662-63 (9th Cir. 2017).  "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods."  Id. at 662.  "Fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue" causes symptoms including "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."  Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).

Here, Plaintiff's voluminous medical records consistently discuss Plaintiff's limitations caused by Plaintiff's complex diagnoses including fibromyalgia, which contributes to her chronic fatigue, pain, depression, anxiety, and sleep issues. Plaintiff's records reflect the "cycle of pain and fatigue"

associated with fibromyalgia.  Id.

The ALJ rejected the three medical professionals' findings as to Plaintiff's limitations based on these diagnoses.  The ALJ wholly disregarded the requirements of Revels.  The ALJ may not ignore the medical professionals' findings and their diagnoses and substitute his own interpretation of the medical record. See Denise M. v. O'Malley, 2024 WL 3159485, *6 (D. Alaska June 25, 2024).

Remand is necessary to allow the ALJ to properly evaluate the opinions of Dr. Valentine, Nurse Practitioner Jackinsky, and Dr. Barville and the consistency of the three opinions with each other and their consistency with other evidence in the record. Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015).

### 2. The ALJ Failed To Properly Conduct A Supportability Analysis Of The Opinions Of Dr. Valentine, Nurse Practitioner Jackinsky, and Dr. Barville

Supportability is a distinct analysis different from consistency.  See Woods, 32 F.4th at 793 n.4.  Supportability is based on an analysis of whether the medical professional's opinion is supported by his own findings and the rationale the doctor provided for such an opinion.  Id.

The ALJ did not conduct a supportability analysis.  The ALJ did not conduct an analysis of the specific evaluations conducted by Dr. Valentine, Nurse Practitioner Jackinsky, and Dr. Barville. He did not explain why their determinations as to Plaintiff's

symptoms and limitations were not supported by their own evaluations.  The ALJ did not address the degree to which the three opinions were supported by their own examination notes, findings, and testing.  <u>Mascarenas v. Comm'r of Soc. Sec. Admin.</u>, 2022 WL 2448279, *5 (D. Ariz. July 6, 2022).  The ALJ failed to conduct a sufficient proper supportability analysis and remand is required.  <u>Chung v. O'Malley</u>, 2024 WL 3224039, *6 (D. Haw. June 28, 2024); <u>Sidhu v. O'Malley</u>, 2024 WL 2700785, *8 (E.D. Cal. May 24, 2024).

Recent decisions in the District Court for the District of Hawaii have repeatedly remanded similar cases for the same error. <u>See</u> <u>Wade v. O'Malley</u>, Civ. No. 23-00350JAO-KJM, 2024 WL 3248021, at *5 (D. Haw. Feb. 16, 2024); <u>Tue v. Kijakazi</u>, Civ. No. 23-00056 LEK-WRP, 2023 WL 8543056, at *9 (D. Haw. Dec. 11, 2023); <u>Akiu v. Kijakazi</u>, Civ. No. 23-00020 JAO-RT, 2023 WL 6311447, at *9 (D. Haw. Sept. 28, 2023); <u>Howard</u>, Civ. No. 23-00138 JMS-RT, 2023 WL 6141372, at *7.

**B.   The ALJ Erred In Rejecting Plaintiff's Testimony Regarding The Intensity, Persistence, And Limiting Effects Of Her Symptoms**

An ALJ may reject a claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons.  <u>Ahearn v. Saul</u>, 988 F.3d 1111, 1116 (9th Cir. 2021).

Here, Plaintiff testified that she frequently suffers from crying spells, that about two days a week she can barely get out of bed, and that she must go back to bed or rest after minimal

activity because of pain and fatigue.  (AR at pp. 45-48, ECF No.
9).  The ALJ asked Plaintiff about her daily activities and she
testified, as follows:

> Pl.: Well, I get up fairly early and then I just
>     do whatever daily things I can.  If I can, I
>     make myself a cup of coffee.  You know, I
>     make sure the cats have food.  I try to do a
>     tiny bit of gardening but it's so exhausting
>     that I usually — I kind of let that go more
>     and I do other things that are less
>     physically exhausting.
>     I like to read but I don't have the
>     concentration so I try to find other things
>     to keep me occupied.  I plan trips out really
>     carefully to get things.
>
> ALJ: Ok, so two questions about that.  First of
>     all, what are some other things you might do
>     if you're not gardening anymore or reading?
>
> Pl.: I like to paint but only sit up for a little
>     while so then I can take it and work on it in
>     bed, like adding details.  A lot of time
>     there are extra details added like with
>     marker and pen and stuff that I can do in
>     bed.
>
> ALJ: So did I understand that, that you're only
>     sitting up for a little while?  So even on a
>     good day, you're spending still a lot of time
>     in bed?  Is that right?
>
> Pl.: Yes.  Usually, after about an hour I need to
>     recline.

(AR at pp. 46-47, ECF No. 9).

The ALJ rejected Plaintiff's testimony about the severity,
persistence, and intensity of her symptoms based on her
engagement in daily activities.  (Id. at pp. 26-27).  The ALJ
wrote in his decision, as follows:

> The claimant does not have to be utterly incapacitated
> in order to be disabled, but these inconsistent
> statements do not support her the [sic] intensity,

persistence, and limiting effects of her pain and other
symptoms.  The claimant's statement that she can
watercolor, for example, is not consistent with her
allegations of difficulty getting out of bed, while the
statements that she does not need reminders is not
consistent with allegations, for example, of difficulty
of problems with concentrating.  The evidence does not
indicate regular attempts to adjust her medication to
minimize side effects such as drowsiness.  The
undersigned finds that the claimant's pain and other
symptoms do not justify additional functional
limitations beyond those adopted above.

(Id.)

The ALJ rejected Plaintiff's testimony about the severity of

her conditions and the limitations caused by her symptoms because

she was able to engage in limited daily activities including

painting with watercolors in bed.  The ALJ's reasoning does not

provide a clear and convincing reason to reject Plaintiff's

testimony.  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir.

2014).

The Ninth Circuit Court of Appeals has repeatedly asserted

that the mere fact that a plaintiff has carried on certain daily

activities does not in any way detract from her credibility as to

her overall disability.  Vertigan v. Halter, 260 F.3d 1044, 1050

(9th Cir. 2001).  An ALJ may reject a claimant's testimony if her

daily activities show she is able to spend a substantial part of

her day engaged in performance of physical functions that are

transferrable to a work setting.  Orn v. Astrue, 495 F.3d 625,

639 (9th Cir. 2007).

The ALJ's reasoning for rejecting Plaintiff's testimony

about the severity, persistence, and intensity of her symptoms is

not supported by the record.  Remand is required for the ALJ to properly evaluate Plaintiff's testimony.  <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 494-95 (9th Cir. 2015).

### C. The ALJ Had A Duty To Develop The Record And Did Not Consider The Totality Of The Circumstances

The ALJ is required to develop the record and evaluate the medical opinions provided.  <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003).  It is well-settled that an "ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."  <u>Williams v. Colvin</u>, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015).

An ALJ cannot selectively rely on some entries and ignore others indicating continued or severe impairments in a claimant.  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1207 (9th Cir. 2001).

Here, Plaintiff suffers from multiple, severe impairments including depression, chronic fatigue syndrome, fibromyalgia, sleep disorders, chronic skin conditions, and severe anxiety disorders.  The ALJ did not consider these effects collectively but selectively picked out instances in the medical record that noted improvement in certain of Plaintiff's symptoms.

Remand on an open record is necessary to allow the ALJ to develop the record, consider the totality of Plaintiff's circumstances, and properly evaluate Plaintiff's testimony and the opinions of Plaintiff's numerous treating physicians.

Benecke, 379 F.3d at 595.

## CONCLUSION

The Commissioner of Social Security Administration's decision is **REVERSED AND REMANDED** for further proceedings on an open record that is consistent with this Order.

The Clerk of Court shall **CLOSE THE CASE**.

IT IS SO ORDERED.

DATED: September 16, 2024, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Lisa Martin v. Martin O'Malley, Civ. No. 24-00037 HG-WRP; **ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**